3:20-cv-03034-SEM-TSH   # 47   Page 1 of 15

E-FILED
Friday, 19 February, 2021  09:42:34 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRIC COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISON

CHRISTOPHER SCHOLZ, as            )
Guardian of JANET HOLLOWAY,       )
A Disabled Person,                )
                                  )
                                  )
   Plaintiff,                     )
                                  )
   v.                             )   No. 20-cv-3034
                                  )
AMERICARE AT ADAMS POINTE         )
ASSISTED LIVING, LLC, a foreign   )
limited liability corporation,    )
and QUINCY I, LLC, a foreign      )
limited liability corporation,    )
                                  )
   Defendants.                    )

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motion to Stay and Compel Arbitration (d/e 29) filed by Defendants Americare at Adams Pointe Assisted Living, LLC and Quincy I, LLC.  Also before the Court is the Motion to Strike Affirmative Defense (d/e 35) filed by Plaintiff.  Because Defendants adequately state an affirmative defense and fail to show that a valid agreement to arbitrate exists,

Defendants' motion to stay and compel arbitration (d/e 29) and Plaintiff's Motion to Strike (d/e 35) are both DENIED.

## I. BACKGROUND

On February 3, 2020, Plaintiff filed a Complaint against Defendants Americare at Adams Pointe Assisted Living, LLC ("Americare") and Quincy I, LLC ("Quincy"). On May 18, 2020, Plaintiff filed an Amended Complaint pleading one count of bodily injury against Americare and one count of bodily injury against Quincy.

In the Amended Complaint, Plaintiff alleges that Defendants, companies that together operate assisted living facilities in Illinois, accepted Janet Holloway as a resident at Adams Pointe Assisted Living on January 26, 2018 and again on February 24, 2018. Mrs. Holloway suffered from advanced dementia. Plaintiff alleges that, on or about February 25, 2018, Mrs. Holloway was left alone in a room with a remote control used to operate her chair lift and that Mrs. Holloway became confused and used the remote incorrectly, crushing herself under the chair lift and sustaining severe injuries. Plaintiff alleges that Mrs. Holloway's family members warned "employees or agents at the establishment" to keep any lift chair

remote controls out of Mrs. Holloway's reach due to the possibility that she might misuse such a device and injure herself. D/e 26, ¶ 35.

On January 26, 2018—the date on which Mrs. Holloway's initial stay at Adams Pointe Assisted Living began—Mrs. Holloway's daughter Mary Brazell signed a document entitled "Assisted Living Establishment Contract" that purported to set forth the legal obligations owed by Quincy to Mrs. Holloway as a resident and by Mrs. Holloway to Quincy. The Assisted Living Establishment Contract was also signed by Mary Leezer, an employee of the Defendants. The contract provided that "any dispute under this agreement will be determined by arbitration as provided in the Arbitration Agreement Attached hereto as Exhibit C and incorporated herein." D/e 34–2, p. 1. A document entitled "Exhibit C: Arbitration Agreement" was attached to the contract, but Exhibit C was not signed by a representative of the Defendants or by Mrs. Holloway or Mary Brazell.

On May 29, 2020, Defendants moved the Court to stay proceedings and enter an order requiring Plaintiff to submit to arbitration. See d/e 29. On June 26, 2020, Plaintiff filed a motion

to strike the Defendants' arbitration agreement affirmative defense. See d/e 35.

## II.  JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Complete diversity exists between the parties. Plaintiff Christopher Scholz is a citizen of Illinois, as is Mrs. Holloway.  See d/e 24, p. 1.  Defendant Quincy has three members, all of whom were, at the commencement of this case, citizens of and domiciled in the state of Missouri.  See id. at p. 2.  Defendant Americare also has three members, all of whom were citizens of and domiciled in the state of Missouri as of the commencement of this case.  See id.  Plaintiff has claimed damages in excess of $75,000. D/e 26, ¶ 3.  See McMillian v. Sheraton Chi. Hotel & Towers, 567 F.3d 839, 844 (7th Cir. 2009) (noting that, where the defendant does not contest the jurisdictional threshold, the court accepts a plaintiff's good faith allegation regarding the amount in controversy unless it appears to a legal certainty that the amount is less than the jurisdictional amount).

## III.  LEGAL STANDARD

A.  **Plaintiff's Motion to Strike Affirmative Defense**

Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Motions to strike are typically disfavored.  Anderson v. Bd. of Educ. of City of Chicago, 169 F. Supp. 2d 864, 867 (N.D. Ill. 2001); Seoud v. E.F. Hutton & Co., Inc., 720 F. Supp. 671, 686 (N.D.Ill.1989).  Generally, a court will strike an affirmative defense only if the defense is insufficient on its face.  Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989).  A court will not ordinarily strike an affirmative defense if the defense is sufficient as a matter of law or presents questions of law or fact. Id.  Because affirmative defenses are pleadings, affirmative defenses are subject to the pleading requirements of the Federal Rules of Civil Procedure and must set forth a "short and plain statement" of the defense. Id., citing Fed. R. Civ. P. 8(a).  Although the Seventh Circuit has not addressed whether the pleading standard set forth in Bell Atl. Corp. v. Twombly, 530 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009) applies to affirmative defenses, several

district courts in this Circuit have found that the Twombly/Iqbal standard does apply. See Sarkis' Cafe, Inc. v. Sarks in the Park, LLC, 55 F. Supp. 3d 1034, 1040 (N.D. Ill. 2014) (citing cases). These courts examine whether the defendant states an "affirmative defense to relief that is plausible on its face." SEC v. Sachdeva, No. 10-C747, 2011 WL 933967, at *1 (E.D. Wisc. Mar. 16, 2011). However, whether the Twombly/Iqbal pleading standard applies likely makes little difference. Factual allegations that were sufficient before Twombly and Iqbal will likely still be sufficient, and "bare bones" affirmative defenses have always been insufficient. See Shield Techs. Corp. v. Paradigm Positioning, LLC, No. 11 C 6183, 2012 WL 4120440, at *8 (N.D. Ill. Sept. 19, 2012). In any event, if an affirmative defense is defective, leave to amend should be freely granted as justice requires under Federal Rule of Civil Procedure 15(a).  See Heller, 883 F.2d at 1294.

**B.     Defendants' Motion to Stay and Compel Arbitration**

The Federal Arbitration Act provides that binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision was intended to put

"arbitration agreements on equal footing with other contracts." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). When a party attempts to avoid arbitration and files suit in the district court, the other party can move to stay or dismiss the action under the Act.  9 U.S.C. § 3 (providing for a stay until the arbitration has been held in accordance with the agreement); 9 U.S.C. § 4 (providing that an aggrieved party can petition the district court for arbitration); see also Volkswagen of Am., Inc. v. Sud's of Peoria, Inc., 474 F.3d 966, 970 (7th Cir. 2007).  To compel arbitration, the party seeking arbitration must show (1) an agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal by the opposing party to arbitrate.  Zurich Am. Ins. Co. v. Watts Indus., Inc., 466 F.3d 577, 580 (7th Cir. 2006).  The Federal Arbitration Act places arbitration clauses "on equal footing with other contracts, not above them"; any "preference" for arbitration in federal law extends only to "the interpretation of a valid arbitration clause," and not to the determination of whether an arbitration clause is valid in the first place.  Janiga v. Questar Capital Corp., 615 F.3d 735, 740 (7th Cir.2010).  The existence or nonexistence of a binding arbitration agreement is a question of state contract law.

Id. at 742.  The Court may consider matters outside the pleadings when ruling on a motion to stay the litigation and compel arbitration.  Armbrister v. Pushpin Holdings, LLC, 896 F.Supp.2d 746, 753 n. 3 (N.D. Ill. 2012).

## IV.  ANALYSIS

### A.  Defendants' Arbitration Agreement Affirmative Defense Is Not Insufficient on its Face

Defendants have alleged facts sufficient to give Plaintiff adequate notice of the nature of their arbitration agreement defense and the grounds on which it rests.  See Top Tobacco, L.P. v. Good Times USA, LLC, No. 14-CV-8978, 2017 WL 395698, at *2 (N.D. Ill. Jan. 30, 2017). In alleging the existence of a binding arbitration contract, defense counsel is pursuing a reasonable legal strategy; the arbitration agreement defense is not "redundant," "impertinent," "immaterial," "scandalous," or legally "insufficient."  See Fed. R. Civ. P. 12(f); Heller, 883 F.2d at 1294 ("Ordinarily, [affirmative] defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact.").  Accordingly, the Court will not strike Defendants' affirmative defense at this time.

## B. Mary Brazell Was Not Authorized to Enter into the Arbitration Agreement

To compel arbitration, the party seeking arbitration must show (1) an agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal by the opposing party to arbitrate. Zurich, 466 F.3d at 580. Here, Plaintiff has refused to arbitrate. See d/e 34, p. 4 ("Plaintiff clearly will not submit to arbitration that is not mandatory."). Therefore, two related threshold questions remain: (1) whether the parties entered into a valid and enforceable arbitration agreement, and (2) if so, whether Plaintiff's claims fall within the scope of said agreement. See Falbe v. Dell, Inc., No. 04-C-1425, 2004 WL 1588243, at *2 (N.D. Ill. July 14, 2004). Here, the Court finds that the parties did not enter into an arbitration agreement and therefore does not reach the issue of the purported agreement's scope.

Defendants concede that Mrs. Holloway did not herself sign either the Arbitration Agreement or the Assisted Living Establishment Contract. Mary Brazell, Mrs. Holloway's daughter, did not sign the Arbitration Agreement, but she did sign the

Assisted Living Establishment Contract. Normally, a non-signatory cannot be bound by an arbitration agreement. However, there are five doctrines that create exceptions to this rule: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference. Zurich, 417 F.3d at 687. Defendants argue that the doctrines of agency and incorporation by reference apply here, in that Mrs. Holloway is bound by the Arbitration Agreement because it was incorporated by reference into the Assisted Living Establishment Contract, which was signed by Mary Brazell, who was Mrs. Holloway's agent. See d/e 43, pp. 4–6.

In Illinois, an agent's authority to act for the principal can be either actual or apparent, and actual authority can be either express or implied. Patrick Eng'g, Inc. v. City of Naperville, 2012 IL 113148, ¶ 34 (citing Zahl v. Krupa, 365 Ill.App.3d 653, 660 (2006)). Express authority is "actual authority granted explicitly by the principal to the agent," while "implied authority is actual authority proved circumstantially by evidence of the agent's position." Id. Implied authority "arises when the conduct of the principal, reasonably interpreted, causes the agent to believe that the principal desires him to act on the principal's behalf." Curto v. Illini

Manors, Inc., 940 N.E.2d 229, 233 (Ill.App.Ct.2010) (holding arbitration agreement signed by wife on behalf of nursing home resident husband to be invalid). The party alleging an agency relationship must prove it by a preponderance of the evidence. See Granite Properties Ltd. Partnership v. Granite Inv. Co., 581 N.E.2d 90, 92 (Ill.App.Ct.1991).

    Defendants argue that Mary Brazell had implied authority to enter into an arbitration contract on her mother's behalf because Ms. Brazell held a durable power of attorney authorizing her to make decisions relating to certain financial accounts belonging to Mrs. Holloway. See d/e 43, pp. 5–6. Authority over a particular financial account, however, does not by itself imply authority to agree to non-financial contractual terms like an arbitration agreement. See Testa v. Emeritus Corp., No. 15 C 02449, 2015 WL 5183900, at *8 (N.D. Ill. Sept. 4, 2015) (holding that son who held power of attorney authorizing him to make healthcare-related decisions for father, and who signed nursing home contract for father and paid nursing home fees, nevertheless did not have implied or apparent authority to enter arbitration agreement). Defendants cite Fiala v. Bickford Senior Living Group, 2015 IL App

(2d) 141160, for the proposition that "Illinois courts have found that power of attorneys have authority to sign arbitration provisions." D/e 30, p. 9.  Fiala, however, involved a healthcare power of attorney rather than a financial power of attorney.  See 2015 IL App (2d) 141160 at ¶ 40.  The court in Fiala held that the acceptance of an arbitration clause that was part of a contract respecting placement in an assisted living facility was a "legitimate health-care decision[] under the authority granted by a health-care power of attorney."  Id.  Here, no healthcare power of attorney existed as of January 26, 2018, and the decision to place Mrs. Holloway in an assisted living facility was not a financial decision that could plausibly have been covered by the financial power of attorney held by Mary Brazell.

    Defendants next argue that Mary Brazell possessed apparent authority to enter into the Arbitration Agreement because she "signed the Assisted Living Establishment Contract 'Daughter-POA.'" D/e 43, p. 6.  Apparent authority "is the authority which the principal knowingly permits the agent to assume, or the authority which the principal holds the agent out as possessing."  Patrick, 2012 IL 113148 at ¶ 34.   The record does not contain any

document "signed" by Mary Brazell as "POA" or "power of attorney." The page Defendants indicate contains no signature field, but merely identifies Mary Brazell as a person with "legal access to [Janet Holloway's] income or resources" and includes Ms. Brazell's printed name next to a field labeled "Relationship" containing the phrase "Daughter-POA." See d/e 43, exh. B, p. 12. The fact that Ms. Brazell identified herself as having a power of attorney over Mrs. Holloway's money does not suggest that Ms. Brazell identified herself as possessing the authority to consent to arbitration on Mrs. Holloway's behalf. See Curto, 940 N.E.2d at 235–36 (holding that neither healthcare power of attorney nor wife's decision to place husband in nursing home created apparent authority to enter into arbitration agreement).

    Even if Ms. Brazell had held herself out as possessing such authority, "[o]nly the alleged principal's words and conduct, not those of the alleged agent" can establish apparent authority. See Testa, 2015 WL 5183900, at *9 (holding that nursing home resident father who granted his son a healthcare power of attorney had not conferred apparent authority to enter into arbitration agreements

on his behalf).  Defendants do not identify any actions of Mrs. Holloway that might be construed as conferring such authority.

Defendant also points out that the Nursing Home Care Act, 210 ILCS 45/2-202, "contemplates" the possibility of immediate family members of a disabled person signing nursing home contracts on behalf of the disabled person.  D/e 43, pp. 6–7.  210 ILCS 45/2-202(a) sets forth a requirement for admission into a nursing home—that the resident, or her agent, or a member of her immediate family execute a written contract with the nursing home.  This requirement does not authorize a family member who would not otherwise have the authority to enter into an arbitration agreement on behalf of her relative to do so.  See <u>Fiala v. Bickford Senior Living Grp., LLC</u>, 2015 IL App (2d) 141160, ¶ 47; <u>Curto</u>, 940 N.E.2d at 235.

## V.  CONCLUSION

For the reasons stated, Defendants' Motion to Stay and Compel Arbitration (d/e 29) and Plaintiff's Motion to Strike Affirmative Defense (d/e 35) are both DENIED.

**ENTERED: February 19, 2021**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE**